## DAN COLYER et al., Respondents, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

### Kansas City Court of Appeals, March 3, 1902.

1. **Railroad: KILLING STOCK: INSTRUCTION ASSUMING FACT.** An instruction assuming that certain mules got upon the track of defendant is not defective since it was an admitted fact in the case; and it is held not to assume that they got through the fence but submits that issue.

2. ———: ———: FENCES: REASONABLE TIME: INSTRUCTION. A railroad company is entitled to a reasonable time to ascertain that its fence is out of repair; and also, to a like reasonable time after such knowledge to make repairs; and the instructions should so inform the jury.

3. ———: ———: ———: INSTRUCTIONS. A railroad must not only build a fence of the proper height with posts firmly set, but it must be of such character as to resist horses, cattle, swine and like stock.

4. ———: ———: ———: EVIDENCE. In an action against a railroad for stock entering on its tracks because of an insufficient fence, the evidence of a witness, who arrived on the ground after hands had been making repairs for several hours, as to the lay of the fence, when he saw it, is inadmissible without evidence that there had been no change in its condition.

5. **Appellate Practice: WEIGHT OF EVIDENCE: FINDING OF TRIAL COURT.** Even though the appellate court may believe the weight of the evidence is in favor of the appellant, yet it can not hold that the respondent should recover where the trial court on the evidence might have so held and refused to exercise the discretion vested in it to set aside the verdict.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

REVERSED AND REMANDED.

*Elijah Robinson* for appellant.

(1)   It has been held, and the correctness of the rule can not be controverted, that a verdict should not be reached by mere guesswork or conjecture.   Moore v. Railroad, 28 Mo. App. 622; Railroad v. Shertle, 97 Pa. St. 450.   (2)   The trial court committed error in permitting plaintiffs' witness, Necessary, to testify as to where the posts were when he reached the place of the accident in the afternoon of the day the accident occurred.   This testimony, under the existing circumstances, was not calculated to throw any light on the issues in the case, but was calculated to mislead the jury.   (3)   Whenever error is committed by the trial court a presumption of prejudice arises, and unless the record shows, beyond a question, that no prejudice resulted from such error, there must be a reversal.   State ex rel. v. Claudius, 1 Mo. App. 566; Clark v. Fairley, 30 Mo. App. 335; Suttie v. Aloe, 39 Mo. App. 43; Walton v. Railroad, 40 Mo. App. 550; Bindbeutal v. Railroad, 43 Mo. App. 463; Walter v. Hoeffner, 51 Mo. App. 50; City of Clarence v. Patrick, 54 Mo. App. 467; McDonald v. Matney, 82 Mo. 358; Dayharsh v. Railroad, 103 Mo. 570; Green v. St. Louis, 106 Mo. 454.   (4)   The court committed error in giving plaintiffs' instruction No. 1. Clardy v. Railroad, 73 Mo. 576.   (5)   The trial court committed error in refusing defendant's instruction No. 2.

*Flournoy & Flournoy* for respondents.

(1)   Did the mules get onto the right of way through the gate or through the fence?   The jury under proper instructions, decided this question, and decided it properly, we

think. (3) Did the court commit error in permitting witness Necessary to testify as to where the posts were or rather how the fence lay when he, Phelps and Chrisman reached the place of accident. Even if the fence had been moved, or if there was testimony that it had been, these witnesses, we think, had a right to state its appearance when they arrived there; the jury had a right to hear it for what it was worth. (3) Respondent's instruction No. 1 is not, in our opinion, subject to either of the two objections lodged against it, but seems to us framed to meet them. (4) Appellant's instruction No. 2 was properly refused.

BROADDUS, J.—The plaintiffs sued defendant railway company for the value of eleven mules killed on its right of way, and for the damage to others injured, which were so struck and injured on the twenty-sixth day of January, 1900, while on the defendant's track which passes through Osage township, Jackson county, Missouri. The petition is in the usual form, to which defendant filed a general denial.

The train that struck the animals was a freight train going west over defendant's road. The accident occurred at about six o'clock a. m. of the day named. They were first discovered on the right of way, but a short time after the accident happened, by James Hamilton, who was a witness for the defendant, who lived about seventy yards from the place where it occurred. His attention was attracted to the matter by noticing that the train had stopped; he then went to see what had happened. When he got to the place, at which time it was quite dark, he saw, what he estimated to be, twenty-five or thirty head of plaintiffs' mules on the right of way, which he drove along the track and in the direction of the gate at the farm crossing, near where he found the mules and where some of them had been struck and injured, which gate he found wide open, and through which the mules passed into plaintiffs' pasture where they were being kept. It was afterwards dis-

covered that a part of the fence, not far from the gate, was down. One of the points in controversy in the case was the direction in which this fence that was down lay, the plaintiffs' seeking to show that it lay towards the right of way, and the defendant to show that it lay towards the plaintiffs' pasture. This witness did not notice which way it did lay.

In about one hour afterwards, two of defendant's employees, to-wit: William Frazier, the section foreman, and Carr Thompson, a section hand, arrived at the place mentioned, both of whom testify that the fence lay towards the pasture, and the top wire of the fence was some fifteen or twenty feet inside of the same, and the next wire also in the pasture but not so far; that three of the posts were broken off near the ground and laid in the pasture, and that a fourth post was still attached to the wire which was also broken, leaned towards the right of way. These two witnesses say that they tied the wire with their hands and set up the fence temporarily and then went to their breakfast; but before they did so, Mr. Henry Arnold, who had gone out that morning to find the mules, learned of the accident, and went to the place, where he saw the said witnesses fixing the fence. He only staid a few minutes, and did not notice which way the fence lay; but one Rhodom Conrow, who accompanied Arnold, states that the fence lay towards the right of way, and he also testified that he did not notice whether the railroad employees put up the fence before they went to breakfast, or left it down, but thinks they left it down. After witness Frazier and other employees returned from their breakfast, they were engaged, more or less, in repairing the fence, the greater part of the day.

On the afternoon of the same day, two other persons, viz., Nicholes Phelps and Sater Necessary, came to the place of the accident while the men were at work on the fence, both of whom state that the fence then lay in the direction of the right of way. It was admitted that all the mules that were examined, which had been on the right of way at the time of the

accident, showed no indications of injury anywhere upon the legs or bodies, caused by the barbed-wire fence, which inclosed the right of way. There was much evidence to the effect that the fence was old and insecure. Some of the posts were rotten near the ground, and the wires were old and rusty. There was other evidence to the effect that the fence was in a reasonably safe condition. It was shown that the gate opened towards plaintiffs' pasture, that it was securely fastened the preceding evening; and that persons other than the adjoining proprietors used the gate for a passway over defendant's tracks, but mostly in the daytime.

The jury brought in a verdict for the plaintiffs for $1,585, upon which the court rendered judgment, doubling the amount. The defendant appealed.

The defendant claims that the court erred in giving plaintiffs' first instruction. Said instruction is not subject to the criticism, that the court therein assumed that the mules got upon the defendant's road through the broken fence. It does assume, what was admitted, that they got upon the defendant's road, but it is left to the jury to say where they got on. But the objection to said instruction in another respect is well taken. The jury are told therein, that if they believe that the fence in question was insecure and was known to be so, by defendant *"in time to have repaired the same prior to said date, or had existed for such a length of time* prior to said date, that defendant by the exercise of ordinary care, could have known of and repaired the same,"* etc. The defect consists in not using qualifying words so as to give defendant a *reasonable length* of time to have made the necessary repairs. This was clearly error. "When a railroad company has once erected fences along the sides of its road, as required by law, it is only liable for negligent failure to maintain them, and is entitled to a reasonable time in which to make repairs, after having knowledge of a defect therein, or after a period of time has elapsed, in which, by the exercise of reasonable diligence it could have

knowledge of such defect." King v. Railroad, 90 Mo. 520; Clardy v. Railroad, 73 Mo. 577.

The defendant's contention is that the refusal to give, at its instance, instruction No. 2, was also error. Said instruction is as follows: "The court instructs the jury that if they believe from the evidence in the case, that defendant's fence, at the point where it is claimed plaintiffs' mules got onto defendant's right of way, was composed of posts and wire, and that said fence was at least four and one-half feet high, and the posts set firmly in the ground, not exceeding eight feet apart, then the plaintiff is not entitled to recover, and the verdict must be for the defendant." This instruction so far as it goes is almost a literal copy of the statute, but it falls short of what is required in a most important particular in this, viz., such fence must be constructed "so as to resist horses, cattle, swine and like stock." In view of the evidence in the case on the part of the plaintiff that the fence was old and insecure, said instruction would have been, in effect, telling the jury that it made no difference if the posts were rotten above the ground, if they were firmly set in the ground, the fence would be a lawful fence. The contention was, not that the defendant had not built at one time a good and sufficient fence, but that it had failed to maintain it as the law required, on which issue said instruction failed in application.

The defendant contends that the court committed error in permitting the witnesses, Phelps and Necessary, to testify as to the way the fence lay when they arrived on the afternoon of the day in question, because it had been shown that the railroad employees had been repairing the same previous to that time. We think the contention should be sustained. All the evidence in the case on both sides was to the effect that from early in the day of the accident the said employees were engaged, much of the time, in repairing the fence, and in doing so they must have changed its position. The evidence was misleading. The question for the jury was, how did the fence

lay soon after the accident and before it was handled ?    If the question had been raised, and a controversy as to whether the position of the fence that lay on the ground had or had not been changed, then such evidence might have been admissible. But here there was no evidence whatever that the location of the posts and wires had not been changed.

The defendant contends that there was no evidence to show that the mules went upon the right of way through the place where the fence was found down.    That as the broken fence lay towards the pasture of the plaintiffs and away from the right of way, and no marks of the wire were on any of the mules that were found on the right of way, and the gate was wide open, the only reasonable conclusion is, that they got onto the right of way through the open gate; or that at best the evidence does not show how the animals got onto the right of way, whether through the gate or through the broken fence. That in either event the verdict should have been for the defendant.    On the plaintiffs' side the contention is, that as the gate opened towards the pasture, it could not for that reason have been pushed open by the mules; that the fence lay towards the right of way as shown by witness Conrow; that there was only one witness who stated that the gate was open; that the fence was old and decayed; and that as there was evidence that grass was on the right of way within reach of the mules, it was reasonable to conclude that they got onto the right of way through the fence after having shoved it down in their efforts to get the grass.    In our opinion, the weight of the evidence was greatly in favor of the defendant, but as there was evidence to support plaintiff's side of the case, we do not feel at liberty to hold that he was not entitled to recover.    The trial court might have so held, but as it refused to do so in the exercise of that discretion vested in it by the law, its action in that regard must be respected.

The question of the amount of plaintiffs' judgment be-

comes immaterial in view of the fact that there must be another trial.

For the errors noted the cause is reversed and remanded. All concur.